IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-30246 |
| Bourbon Street LLC, | ) | Chapter 11 – Subchapter V |
| d/b/a La Cantina, et al. | ) | |
| | ) | |
|     Debtors, Jointly Administered. | ) | |
| _____ | ) | |
| | ) | |
| Gannett Peak, LLC | ) | |
| | ) | Adversary Case No. _____ |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MicroAdvance Funding, LLC | ) | |
| | ) | |
|     Defendant. | ) | |

**COMPLAINT**

Comes now Gannett Peak, LLC ("Gannett Peak" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal Rule of Civil Procedure 3, and as and for its complaint (the "Complaint") against MicroAdvance Funding, LLC ("MAFL" or the "Defendant") states as follows:

**Introduction**

1. On July 17, 2023, MAFL agreed to send $33,450.00 to the Debtor, in exchange for the Debtor agreeing to pay MAFL $47,250.00 over a period of approximately 36 weeks. At first blush, this would appear to be a loan with an annual interest rate of 59.5%. But MAFL confidently asserts the transaction is not a loan, as evidenced by the words "THIS IS NOT A LOAN" appearing in oversized font, in uniformly-capitalized letters, at the top of the second page of the underlying agreement (the "Agreement").

1

2. The aggressive disclaimer is neither coincidence nor folly; the transaction in question is a so-called "merchant cash advance" (an "MCA"), a variety of commercial funding that has come into vogue of late, proving every bit as toxic to small businesses as so-called payday loans have become to consumers.

3. The theory of an MCA is relatively simple: the funds being tendered to a small business are not a loan (which would implicate uncomfortable questions about the application of various states' usury laws) but, rather, the proceeds of an advanced purchase of future receivables.

4. An MCA has nearly every optical resemblance to a loan – including, in many cases (such as the one *sub judice*), a security agreement and personal guaranty – but, per the governing document's express terms, is instead characterized as a simple sales transaction.

5. Notably, MCA agreements are akin to factoring agreements only insofar as community banks are akin to loan sharks; the premium charged under MCA contracts dwarfs that of traditional factors, while MCA agreements seek to impact *all* future receivables of a company in contrast to the sale of specifically-identified (and contemporaneously extant) receivables that ordinarily underly a factoring agreement.

6. Too often, the only way for a small business to survive the repayment rigors of an MCA agreement is to enter into a new MCA agreement, just as consumers take out one payday loan to satisfy the obligations attendant to the last payday loan; increasingly, the oft-vicious cycle of MCA debt is driving small businesses to seek relief under Title 11 of the United States Code, and such is very much what happened here.

7. Gannett Peak accordingly now brings suit against MAFL, proceeding under the very theory so boldly advertised by MAFL: the transaction in question ought not be characterized as a loan but, rather, as a sale of future receivables. If so, the transaction is a textbook fraudulent

2

conveyance, as Gannett Peak – being insolvent at all times relevant – bargained away $47,250.00 in future receivables for $33,450.00, a sum of money that does not even vaguely approximate reasonably equivalent value.

8. To be sure, other ills are afoot *sub judice*; it seems MAFL has run roughshod over the automatic stay in a particularly egregious fashion, and there is a lien thusly in need of avoidance. But at core, this suit is brought to cast light upon the pernicious harms of the MCA industry, while affording relief for Gannett Peak – an entity that, unfortunately, appears to be just the latest victim of this deleterious fad.

## Parties

9. Gannett Peak is a North Dakota limited liability company and a debtor-in-possession, having petitioned for relief under Section 301 of Title 11 of the United States Code on July 29, 2023.

10. MAFL is a Delaware limited liability company that purports to have its principal place of business in the Commonwealth of Pennsylvania.

11. MAFL is not registered to conduct business in the State of North Dakota.

## Jurisdiction and Venue

12. This Honorable Court enjoys jurisdiction over the instant proceeding, pursuant to the allowances of Section 157(b)(2)(A, H, O) of Title 28 of the United States Code, as this case concerns the administration of the Debtor's estate, an effort to recover a fraudulent conveyance, and the adjustment of the debtor-creditor relationship.

13. Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1334 of Title 28 of the United States Code, as this matter relates to a proceeding under Title 11 of the United States Code.

## General Allegations

14. Gannett Peak is in the business of operating a Tex Mex-themed restaurant and bar in Grafton, North Dakota, serving members of the local community and collecting revenues through the sale of food and beverages.

15. Needing cash to sustain its operations, Gannett Peak entered into the Agreement, with MAFL, on July 17, 2023. *See* Agreement, attached hereto as Exhibit A.

16. Per the Agreement, MAFL is to fund $33,450.00 to Gannett Peak, *see* Agreement, Exhibit A, at p. 2, in exchange for Gannett Peak diverting $47,250.00 in future receivables to MAFL through payments of $1,312.50 per week, *id.*

17. The Agreement was drafted by MAFL and, in addition to proclaiming the transaction to not be a loan in the manner referenced *supra*, provides, *inter alia*, "Merchant is selling a portion of a future revenue stream to MicroAdvance at a discount, not borrowing money from MicroAdvance." *Id.* at p. 2.

18. Despite the repetitive internal denials of lending activity, the Agreement provides for a personal guaranty of payment, by Gannett Peak's principal. *Id.* at p. 12, § 13.

19. Also in spite of the repetitive denials of lending activity, MAFL recorded a UCC-1 lien to secure its claim against Gannett Peak's various receivables.

20. It was initially believed MAFL recorded the foregoing UCC-1 lien on or about July 20, 2023 – three days after the Agreement was executed – but, upon further review of the North Dakota UCC index, it appears MAFL may have recorded the foregoing UCC-1 lien on August 11, 2023, nearly two weeks after Gannett Peak sought bankruptcy protection.

21. MAFL was given notice of the Debtor's bankruptcy at the time of its filing and then, subsequently, given notice of the Debtor's motion for leave to utilize cash collateral.

4

22. On August 10, 2023, MAFL was *again* notified of the bankruptcy proceeding, when proposed counsel for Gannett Peak wrote to counsel for MAFL to request MAFL cease collection activities, and when proposed counsel for Gannett Peak then spoke – by telephone – with counsel for MAFL to relay the same request.

23. It now appears that after (i) receiving notice of the bankruptcy of Gannett Peak; (ii) receiving a copy of Gannett Peak's motion to use cash collateral, via US Mail; (iii) receiving a copy of Gannett Peak's motion to use cash collateral, via e-mail; (iv) receiving a letter from proposed counsel for the Debtor, informing MAFL of the bankruptcy of Gannett Peak, via e-mail; and (v) having its counsel speak with proposed counsel for Gannett Peak about the pendency of the bankruptcy proceeding, the response of MAFL was to then record a UCC-1 financing statement.

**Count I – Fraudulent Conveyance (11 U.S.C. § 548)**

24. Gannett Peak repeats and realleges paragraphs 1-2 3of this Complaint, as though fully set forth herein.

25. In paying $33,450.00 for the acquisition of $47,250.00 in future revenues of the Debtor, MAFL did not afford reasonably equivalent value to Gannett Peak.

26. Specifically, since MAFL was not purchasing any identified receivable or collection of receivables but, rather, a portion of *all* future receivables of the Debtor, MAFL did not undertake any cognizable risk of the Debtor's customers not paying their correlative obligations.

27. Indeed, since the Debtor is a restaurant/bar, and its "receivables" are comprised of the funding of credit card payments tendered by diners/consumers, MAFL did not undertake any

5

cognizable risk of the Debtor not collecting the promised sum of $1,312.50 in revenues each week for a series of approximately 36 weeks.

28. As MAFL was aware at all times relevant, the Debtor has always collected more than $1,312.50 in revenues per week (since the incipiency of the Debtor's public-facing operations) and, as such, was virtually assured of receiving 100% of the monies pledged to MAFL.

29. This accordingly created a paradigm where MAFL was not purchasing risk or offering a modestly-discounted purchase price for future revenues so as to account for the net present value of money; this was, rather, a situation whereby MAFL was purchasing an assured sum of $47,250.00 – payable in equal installments, over roughly 36 weeks – for just over 70 cents on the dollar.

30. At the time of entering into this transaction, Gannett Peak (i) was unable to pay its debts as they came due (hence the need to obtain money from MAFL); and (ii) had total liabilities that exceeded its total assets, thereby rendering Gannett Peak insolvent.

31. Even if, *arguendo*, Gannett Peak was not insolvent at the time it entered into the Agreement, Gannett Peak was rendered insolvent (or, as it is, further insolvent) by virtue of the obligation assumed in the Agreement.

WHEREFORE, Gannett Peak respectfully prays this Honorable Court (i) avoid the Debtor's obligations under the Agreement; (ii) avoid the UCC-1 filing of MAFL together with any other security interest, perfected or inchoate, of MAFL; and (iii) afford such other and further relief as may be just and proper.

**Count II – Uniform Voidable Transactions Act (N.D. Cent. Code § 13-02.1, *et seq.*)**

32. Gannett Peak repeats and realleges paragraphs 1-23 of this Complaint, as though fully set forth herein.

33. Gannett Peak was insolvent, within the definition afforded by Section 13-02.1-02 of the North Dakota Century Code, at the time Gannett Peak entered into the Agreement with MAFL.

34. Gannett Peak repeats and realleged paragraphs 25—29 of this Complaint, as though fully set forth herein, and submits the same allege the Agreement to have not afforded reasonably equivalent value to Gannett Peak.

35. Pursuant to Section 13-02.1-11 of the North Dakota Century Code, the claims set forth in this Count II are governed by North Dakota law, notwithstanding a Pennsylvania choice of law provision in the Agreement.

WHEREFORE, Gannett Peak respectfully prays this Honorable Court (i) avoid the Debtor's obligations under the Agreement, pursuant to Section 544 of Title 11 of the United States Code and Section 13-02.1-04 of the North Dakota Century Code; (ii) avoid the Debtor's obligations under the Agreement, pursuant to Section 544 of Title 11 of the United States Code and Section 13-02.1-05 of the North Dakota Century Code; (iii) avoid the UCC-1 filing of MAFL together with any other security interest, perfected or inchoate, of MAFL, pursuant to Section 544 of Title 11 of the United States Code and Section 13-01.1-07 of the North Dakota Century Code; and (iv) afford such other and further relief as may be just and proper.

### Count III – Lien Avoidance (11 U.S.C. § 544)

36. Gannett Peak repeats and realleges paragraphs 1-23 of this Complaint, as though fully set forth herein.

37. At the time Gannett Peak filed a petition for bankruptcy relief, on July 29, 2023, MAFL had not recorded a lien in the North Dakota UCC register as against the assets of Gannett Peak.

38. Subsequent to Gannett Peak seeking bankruptcy protection, on or about August 11, 2023, MAFL proceeded to record a UCC-1 financing statement in North Dakota (the "Recorded UCC"), purporting to create a lien against the assets of Gannett Peak.

WHEREFORE, Gannett Peak respectfully prays this Honorable Court (i) avoid the Recorded UCC, pursuant to Section 544 of Title 11 of the United States Code; and (ii) afford such other and further relief as may be just and proper.

**Count IV – Violation of the Automatic Stay (11 U.S.C. § 362)**

39. Gannett Peak repeats and realleges paragraphs 1-23 and 38 of this Complaint, as though fully set forth herein.

40. By filing the Recorded UCC on August 11, 2023, MAFL undertook an "act to … exercise control over property of the estate," in contravention of Section 362 of Title 11 of the United States Code.

41. By filing the Recorded UCC on August 11, 2023, MAFL undertook an act to "perfect" a "lien against property of the estate."

42. By filing the Recorded UCC on August 11, 2023, MAFL undertook an act to "perfect, or enforce against property of the debtor [a] lien to the extent that such lien secures a claim that arose before the commencement of the case" at bar.

43. MAFL was on actual notice of this bankruptcy proceeding at the time it filed the Recorded UCC, having (i) received notice via US Mail; (ii) received notice via e-mail; and (iii) having received notice, through its counsel, via telephone.

44. The Debtor has suffered actual damages as a result of this violation of Section 362 of Title 11 of the United States Code, inasmuch as the Debtor has been forced to direct its counsel

to bring suit to avoid the Recorded UCC, and to incur the legal fees associated with that effort, as a direct and consequential effect of MAFL's actions.

    WHEREFORE, Gannett Peak respectfully prays this Honorable Court (i) enter judgment against MAFL, and in favor of Gannett Peak, in a sum equal to the damages sustained by Gannett Peak on account of MAFL's violation of Section 362 of Title 11 of the United States Code; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 28, 2023    By:    /s/ Maurice B. VerStandig
    Maurice B. VerStandig, Esq.
    The Dakota Bankruptcy Firm
    1630 1st Avenue N
    Suite B PMB 24
    Fargo, North Dakota 58102-4246
    Phone: (701) 394-3215
    mac@dakotabankruptcy.com
    *Proposed Counsel for the Debtor*